# Exhibit A

1
2
3
4
5

THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

6
7

KATIE BIRON, a Washington individual;          Case No.

Plaintiff,          SUMMONS

v.

AMARA, a Washington nonprofit
organization,

Defendant.

TO THE DEFENDANT: AMARA

A lawsuit has been started against you in the above entitled court by Katie Biron, plaintiff. Plaintiff's claim is stated in the written complaint, a copy of which is served upon you with this summons.

In order to defend against this lawsuit, you must respond to the complaint by stating your defense in writing, and by serving a copy upon the person signing this summons within 20 days after the service of this summons, excluding the day of service, or within sixty (60) days if this Summons was served outside the State of Washington, or within forty (40) days if this Summons is served through the Insurance Commissioner's Office, or a default judgment may be entered against you without notice. A default judgment is one where plaintiff is entitled to what he asks for because you have not responded. If you serve a notice of appearance on the undersigned person, you are entitled to notice before a default judgment may be entered.

SUMMONS - 1

1    If you wish to seek the advice of an attorney in this matter, you should do so promptly so

2    that your written response, if any, may be served on time.

3    This summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State

4    of  Washington.

5

6    DATED this 10th day of November, 2025.

7                                              SEYFARTH SHAW LLP

8

9                          By:   */s/ Daniel B. Keum*
                                 Daniel B. Keum, WSBA No. 57174
10                               Matthew E. Moersfelder, WSBA No. 45620
                                 999 Third Avenue, Suite 4700
11                               Seattle, Washington 98104-4041
                                 Phone:  (206) 946-4910
12                               Email:  dkeum@seyfarth.com
                                         mmoersfelder@seyfarth.com
13
                                 *Attorneys for Plaintiff*
14

15

16

17

18

19

20

21

22

23

24

25

26

SUMMONS - 2

ꞈꞈꞈ

ꞈꞈꞈꞈꞈꞈꞈ
ꞈꞈꞈꞈꞈ
ꞈꞈꞈꞈꞈꞈꞈ
ꞈꞈꞈ
ꞈꞈꞈꞈꞈꞈꞈꞈꞈ

THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| KATIE BIRON, a Washington individual; <br><br> Plaintiff, <br><br> v. <br><br> AMARA, a Washington nonprofit organization, <br><br> Defendant. | Case No. <br><br> **COMPLAINT** |

Plaintiff Katie Biron, using the name the Family Connections Program ("Plaintiff" or "FCP"), by and through its counsel of record, Seyfarth Shaw LLP, alleges as follows:

## I.    INTRODUCTION

1.      This is a case of blatant deception, lies, and theft of intellectual property. It arises from a once-promising possible partnership between FCP and Amara with the aim of helping foster children to build relationships between parents—whose children are placed in foster care—and those caring for the children (caregivers) in Washington State.

2.      Katie Biron developed an early version of the FCP in 2017.  However, since Ms. Biron was operating FCP as an individual, and not at the time through a nonprofit organization, she needed a host organization for the program to receive government funds. FCP had several different possible host organizations for the program, which Amara was one of the options.

3.      In late 2020, Amara offered to act as host organization for the FCP, while recognizing that the program was owned by and belonged to FCP. In order to allow Amara to act

COMPLAINT - 1

as a host organization and assist in the provision of the FCP, it granted a non-exclusive license ("License Agreement") to Amara to use FCP's marketing and program materials such as the license to use FCP's program brochures, training manuals, tutorial and training videos, surveys, program video and content, email templates, website program language, and trademarks in this development effort ("Intellectual Property.") In exchange Amara assigned all rights it might ever have in the Family Connections Program to FCP.  The License Agreement required that at the end of the agreement Amara would return all Family Connection Program materials to FCP and cease all use of those materials. In addition, the License Agreement stated that Amara agreed to cease and desist from all use of the Trademarks and the Program in any way upon termination of the License Agreement.

4.    Following a period of working together for several years, in early February 2025, Amara elected not to renew its License Agreement with FCP and informed in writing to FCP that it would return all of FCP's Intellectual Property prior to the License Agreement's expiration.

5.    Amara broke its promise and never returned the materials. Indeed, it had different, undisclosed ambitions to FCP, which were to secretly compete with FCP and unlawfully leverage FCP's materials to develop its own family connections program for foster children. Amara violated its contractual and statutory obligations to return FCP's Intellectual Property and to this day improperly uses the Intellectual Property to develop its own competing family resources program similarly titled Families Building Community ("FBC.") Upon information and belief, Amara is now applying to government sponsorships and funding and misrepresenting to government agencies that the Intellectual Property is Amara's and not FCP's.

## II.    PARTIES AND RELEVANT NON-PARTIES

6.    Katie Biron is an individual domiciled in Washington.

7.    Amara is a Washington nonprofit organization with its headquarters in Washington.

COMPLAINT - 2

### III.    JURISDICTION AND VENUE

8.    This Court has general subject matter jurisdiction over this action under RCW 2.08.010.

9.    Venue before this Court is proper pursuant to RCW 4.12.020 because a substantial part of the events giving rise to Plaintiff's claims occurred in King County and Defendant resides in King County.

### IV.    STATEMENT OF APPLICABLE FACTS

**A.    Amara and FCP Explore a Working Relationship in 2020**

10.    In 2017, Biron began the work that eventually evolved into FCP, a unique approach utilizing the lived experience and unique skillset of peer mentors to help build relationships between birth and foster parents in order to better support foster children. This effort evolved from her involvement in community programs dedicated to addressing foster children's needs and her own experience as a foster and adoptive parent  From 2017–2019, Biron presented her work on building and nurturing relationships between parents whose children were placed in foster care and the caregivers raising them. She shared this work with multiple organizations across Washington State and self-funded these efforts. Biron also created all the program documents and trainings on her own. During this period, Amara was not involved in the early days of FCP's work.

11.    Biron also served as chair of a Child Welfare Stakeholders Group ("CAP"). There, Biron raised concerns about strained parent–caregiver relationships and proposed using peer mentors to help navigate these challenges. CAP members recognized the importance of this issue and supported her efforts. Over the next two years, Biron developed the program structure and materials, regularly bringing drafts to CAP for feedback. Members were enthusiastic and contributed as they could. One member represented Amara, which at the time was considering a program where their social workers would facilitate meetings between parents and caregivers.

12.    In April 2019, Amara shared with CAP that they were pursuing implementation of the Annie E. Casey's *Icebreakers Program* for families served by their agency. Shortly afterward,

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA 98104-3100
(206) 946-4910

1   Amara informed CAP they had paused this plan because of Amara's growing interest in Biron's

2   unique concept of using parents and caregivers with lived child welfare experience to serve as peer

3   mentors to FCP participants instead of the social worker.

4       13.    Biron considered multiple non-profit host organizations for the FCP, as she did not

5   have her own non-profit, which was required to acquire funding for the program. The first pilot

6   site to offer FCP was the King County Family Treatment Court. Amara had no involvement in this

7   pilot and all agreements related to this pilot site were between Biron and the Court.

8       14.    On November 4, 2019 Amara contacted Biron to inquire whether a partnership

9   between FCP and Amara was possible. Amara contacted Biron in part because Biron had a working

10  history with Amara and given Amara's generally known commitment to foster children. FCP and

11  Amara envisioned that a partnership between Amara and FCP would support the goal of bridging

12  and beginning relationships between foster children with their birth parents. Biron was agreeable

13  to considering Amara as a second host organization for FCP.

14      15.    Biron advocated for, and obtained, funding from the State of Washington to support

15  FCP in 2020. She did this without any support or assistance from Amara. She also brought forth a

16  proposal to the legislature to codify FCP in statute. In March 2020, the bill creating FCP was

17  signed into law with full funding. Unfortunately, the emergence of the Covid-19 pandemic meant

18  that the governor vetoed all funding for the program. The program remained in effect.

19      16.    Amara and Biron then partnered to locate program funding. In December 2020,

20  Biron secured funding from Casey Family Programs ("CFP"). Before releasing the funds, CFP

21  required confirmation that Biron was the sole owner of FCP. CFP's attorney, Mercedes Scopetta,

22  then confirmed that Amara acknowledged Biron's ownership of the program. As a result, CFP

23  required Katie and Amara to formalize a license granting Amara the right to utilize the FCP logo

24  and materials, ensuring clarity and preventing future disputes.

25      17.    In November 2020, Biron drafted and developed a License Agreement wherein

26  FCP agreed to provide a non-exclusive license to Amara to use the Intellectual Property. Amara

COMPLAINT - 4

understood at this time, and at all times, that the Intellectual Property belonged to FCP, which explained the need for Amara and FCP to create the License Agreement in order to receive CFP's funding. To that end, FCP and Amara negotiated the terms and conditions of the License Agreement in late 2020. Throughout these negotiations, Amara was fully aware that Biron was the exclusive developer and owner of the FCP Intellectual Property, Mercedes Scopetta, Casey's attorney, confirmed in writing that "Amara has made Casey aware that Katie Biron, Amara's contractor, is the owner of the Family Connections Materials and trademarks."

> **B.     Amara and FCP Execute the License Agreement Assigning Amara a Limited, Non-Exclusive License and Requirement to Return All Intellectual Property**

18.     On March 10, 2021, Amara and FCP finalized and executed the Intellectual Property Agreement. The License Agreement is unequivocal about FCP's complete and unimpeded ownership to the Intellectual Property. The License Agreement was executed by Katie Biron on behalf of FCP and Jason Gortney, the interim Chief Executive Officer of Amara at the time.

19.     Specifically, the License Agreement recognized that FCP was "the owner of trademarks and/or service marks Family Connections Program and accompanying design, including all common law rights, including the marks set forth on Schedule A."

20.     The License Agreement further recognized that FCP is "the owner and creator of the program offered under the Trademarks for creating a framework for building relationships to facilitate foster care."

21.     The License Agreement also specifically recognized that the Licensee, here Amara, was only being granted "the nonexclusive right and license to use the Trademarks . . . and the materials developed for the Program [] in connection with the Program." The License Agreement further stated the "licenses [were][] nontransferable by Licensee except with Licensor's prior written approval, and all transferees of this license must agree to comply with the terms and conditions of this agreement." Indeed, there was even an acknowledgement provision in the

COMPLAINT - 5

1  Intellectual Property Agreement, which had Amara "acknowledge[] and agree[] that all rights in

2  the Program and the Materials in connection with the Program belong exclusively to Licensor."

3  And, "[t]o the extent that Licensee would otherwise be entitled to any copyright rights in the

4  Materials, Licensee hereby assign[ed] all such rights to Licensor."

5          22.     The License Agreement also mandated that, if it were terminated, Amara would be

6  required to "cease and desist from all use of the Trademarks and the Program in any way and will

7  deliver up to Licensor, or its duly authorized representatives, all goods, material, and papers upon

8  which any of the Trademarks appear."

9          23.     In short, the License Agreement is crystal-clear: Amara was being granted a limited,

10  non-exclusive license to the Intellectual Property that Amara needed to return back to FCP upon

11  conclusion of the License Agreement.

12          24.     Per the agreement, the term of the License Agreement was five years from the

13  execution date.

14  **C.      Amara Violates the License Agreement and Refuses to Return them to FCP**

15          25.     In October 2024, Amara informed the FCP Advisory Committee that they had

16  applied for and been awarded a grant through the King County Best Starts for Kids program that

17  would allow them to continue the FCP work for the next 3 years.

18          26.     Aware that Amara had secured ongoing funding for FCP, as well as knowing that

19  the Washington State Legislature had provided funding to FCP for the 2025-27 biennium,

20  approaching the expiration of the License Agreement, on February 12, 2025, Ms. Biron contacted

21  Amara to see if it wanted to renew the License Agreement as it was set to expire on March 21,

22  2025.

23          27.     On February 27, 2025, Xuan Chang, on behalf of Amara, responded to Ms. Biron

24  and stated that Amara had "elected not to renew the Family Connections Program license." It

25  specifically promised to "ensure that all FCP materials, name, derivative work and logo [would]

26  be removed prior to the license expiration."

COMPLAINT - 6

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA 98104-3100
(206) 946-4910

28.     Despite their assurances, and contractual obligation to do so, Amara never returned the materials to FCP. To date, the Intellectual Property has not been returned.

29.     In 2025, Ms. Biron discovered that Amara has been improperly using the Intellectual Property Materials for their own gain and benefit in direct violation of the License Agreement.

30.     Indeed, not only has Amara continued performing family connections work on their own, but Amara at first changed the name of its program to Family and Communication Connections Program, which nearly copied FCP's name. After objections from FCP, Amara then changed the program name again to Building Family and Communication Connections. Amara has since renamed their program again to Families Building Community.

31.     Amara is now using FCP's Intellectual Property, including using the same images and trademarks, program and manual materials for its Building Family and Communication Connections program, and directly copying the language phrasing and templates that belong to FCP on their own website and marketing materials. Examples of the known infringements include the following:



**10/29/25 – Amara's FBC Program**

**FBCP 101**

Our online FBCP 101 meeting shows how parents and caregivers involved in the child-welfare system can partner to make the experience of foster care less traumatic for everyone involved. We will hear from professionals with lived experience in "the system." We encourage parents, caregivers, caseworkers, and anyone interested in learning about the FBCP's different approach to providing care to join and learn how authentic partnering is transforming foster care for kids and families.

**11/7/23 – Katie's Family Connections Program**

Amara's Family Connections Program's *Connections 101* is for anyone interested in learning about a different approach to providing care for kids and youth in foster care. We encourage case workers, parents, and caregivers to attend this free virtual conversation.

Connections 101 shows how parents and caregivers involved in the child-welfare system can partner to make the experience of foster care less traumatic for everyone involved. We will talk about the value of building child and family-centered relationships, and hear from professionals with lived experience in "the system."

Join us virtually at 1pm on November 15th to learn how authentic partnering has the potential to transform foster care for kids and families.

COMPLAINT - 7



SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA 98104-3100
(206) 946-4910

32.     Amara is also using the FCP's Intellectual Property to seek government funding claiming FCP's Intellectual Property as its own.

33.     Amara's refusal to return FCP's Intellectual Property has also prevented FCP from pursing the Family Connections Program with a different host organization or non-profit, which has impacted its ability to seek the government funding earmarked for the Family Connection Program.

34.     Upon information and belief, because of Amara's illegal actions, FCP is in danger of losing out on at least $1,200,000 million in government funding, which Amara is seeking to convert to its own benefit using FCP's Intellectual Property.

### V.     CLAIMS OF RELIEF

35.     FCP brings the following direct claims arising out of Amara's misconduct:

### COUNT ONE

### BREACH OF CONTRACT

### (<u>Against Amara</u>)

36.     FCP realleges and incorporates the foregoing paragraphs of this Complaint as fully set forth herein.

37.     Amara entered into the License Agreement with FCP to return all of the Intellectual Property back to FCP upon termination of the Intellectual Property Agreement.

38.     Amara breached the terms of the License Agreement relating to the return of the Intellectual Property back to FCP upon its termination.

39.     Amara has caused damages to FCP and is liable to FCP in an amount to be proven at trial.

COMPLAINT - 9

**COUNT TWO**

**UNJUST ENRICHMENT**

**(<u>Against Amara</u>)**

40.      FCP realleges and incorporates the foregoing paragraphs of this Complaint as fully set forth herein.

41.      FCP agreed to provide a limited and non-exclusive license to Amara to use its Intellectual Property under the License Agreement.

42.      Amara received the benefit of the Intellectual Property.

43.      Amara failed to return the Intellectual Property back to FCP.

44.      Amara has therefore unjustly retained the benefit FCP's Intellectual Property.

45.      It would be unjust to allow Amara to retain the benefits of FCP's Intellectual Property.

46.      Amara has caused damages to FCP in an amount to be proven at trial.

**COUNT THREE**

**NEGLIGENT MISREPRESENTATION**

**(<u>Against Amara</u>)**

47.      FCP realleges and incorporates the foregoing paragraphs of this Complaint as fully set forth herein.

48.      Amara  misrepresented to FCP of its intentions with FCP's Intellectual Property and misrepresented and made material omissions regarding its intentions to use and return the Intellectual Property.

49.      The misrepresentations and omissions made by Amara were material and induced FCP to enter into the License Agreement

50.      FCP justifiably relied on Amara when it entered into the License Agreement based on Amara's misrepresentations and omissions.

51.      Amara has caused damages to FCP in an amount to be determined at trial.

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA 98104-3100
(206) 946-4910

**COUNT FOUR**

**CONVERSION**

**(<u>Against Amara</u>)**

52.     FCP realleges and incorporates the foregoing paragraphs of this Complaint as fully set forth herein.

53.     Amara has and continues to intentionally retain Intellectual Property owned by FCP

54.     Amara has and continues to intentionally retain and use the Intellectual Property that rightfully belongs FCP as outlined in the License Agreement.

55.     Amara has and continues to use the Intellectual Property for its own gain and use.

56.     As a direct and proximate cause of Amara's conversion, FCP has suffered and will continue to suffer harm, loss, and/or damages in the amount of at least $1,200,000 and in an amount to be proven at trial.

**COUNT FIVE**

**TROVER**

**(<u>Against Amara</u>)**

57.     FCP realleges and incorporates the foregoing paragraphs of this Complaint as fully set forth herein.

58.     Amara's continued possession of the Intellectual Property is injurious to FCP's property rights.

59.     Amara's injurious continued possession of the Intellectual Property is a direct and proximate cause of injury and damage to FCP.

**COUNT SIX**

**INJUNCTIVE RELIEF**

**(<u>Against Amara</u>)**

60.     FCP realleges and incorporates the foregoing paragraphs of this Complaint as fully set forth herein.

COMPLAINT - 11

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, WA 98104-3100
(206) 946-4910

61.     As a direct and proximate result of Amara's ongoing wrongful and unauthorized acts as alleged herein, FCP has suffered and will continue to suffer actual, substantial, and irreparable injury to its business and interests. Amara has and continues to violate the License Agreement and continues to use the Intellectual Property developed and paid for by FCP.

62.     As a result, FCP has no adequate remedy at law to compensate it for the continuing injuries inflicted by Amara. Accordingly, FCP is entitled to injunctive relief in the form of an order that enjoins Amara from (1) violating any provisions of the License Agreement including, but not limited to, requiring the return of all Intellectual Property to FCP by Amara under the License Agreement; and (2) using the Intellectual Property developed by and paid for by FCP.

## VI.     REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

A.     A preliminary injunction against Amara enjoining it from (1) violating any provisions of the License Agreement including, but not limited to, requiring the return of all Intellectual Property to FCP by Amara under the Intellectual Property Agreement; and (2) using the Intellectual Property developed by and paid for by state funds specifically allocated to FCP.

D.     An award in favor of FCP for damages in an amount to be determined at trial.

E.     An award in favor of FCP for prejudgment interest and attorneys' fees and costs as permitted under the law and contract.

F.     Disgorgement of wrongfully gained profits and technology.

G.     Any and all other further relief that the Court deems reasonable and proper.

/ /

/ /

/ /

/ /

/ /

/ /

COMPLAINT - 12

1

Respectfully submitted this 10th day of November, 2025.

2

3

SEYFARTH SHAW LLP

4

By:    /s/ Daniel B. Keum

5

Daniel B. Keum, WSBA No. 57174
Matthew E. Moersfelder, WSBA No. 45620

6

999 Third Avenue, Suite 4700
Seattle, Washington 98104-4041

7

Phone:  (206) 946-4910
Email:  dkeum@seyfarth.com
         mmoersfelder@seyfarth.com

8

9

*Attorneys for Plaintiff*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

COMPLAINT - 13