UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KATIE BIRON, a Washington individual, | Case No. 2:25-cv-02526-GJL |
| Plaintiff, | PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS |
| v. | |
| AMARA, a Washington nonprofit organization, | |
| Defendant. | |

Plaintiff Katie Biron ("Plaintiff" or "Biron") hereby opposes Defendant Amara's ("Defendant" or "Amara") Motion to Dismiss Plaintiff's Third Cause of Action – Negligent Misrepresentation ("Motion").

## I. INTRODUCTION

This is a case about Amara's deception and theft of Biron's intellectual property, which originates from a partnership between Biron and Amara that sought to help foster children build relationships between foster and biological parents in Washington State. In connection with this effort, Amara agreed to a non-exclusive license agreement ("License Agreement"), which granted Amara a license to use Family Connections Program's ("FCP") trademarked training materials and programming ("Intellectual Property"). At the termination of the License Agreement, Amara failed to return Biron's intellectual property materials, as it agreed to do. After Biron filed suit—including asserting her claim of negligent misrepresentation based on this broken promise—

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS - 1
CASE NO. 2:25-CV-02526-GJL

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, Washington 98104-4041
(206) 946-4910

Amara filed their Motion on technical pleading grounds based on alleged failure to adequately plead all of the elements of the negligent misrepresentation claim (Count Three of the Amended Complaint). However, as set forth below, the Motion should be denied as Biron has sufficiently pleaded all of the elements pursuant to Rule 9(b) for the following reasons:

<u>First</u>, with respect to the "who" of the negligent misrepresentation claim, Biron identified that Amara's officers, through Nicole Mazen ("Mazen"), the Director of Foster Care Services at Amara in 2019, and Xuan Chung ("Chung"), Chief Innovation and Program Officer at Amara in 2025, supplied Biron with materially false information. Additionally, Mercedes Scopetta ("Scopetta"), Casey Family Programs's ("Casey") attorney, relayed Amara's misrepresentations in 2020.

<u>Second</u>, as to the "where" and "when" of the negligent misrepresentation claim, Biron clearly pleaded the specific date and context, which were on November 4, 2019 and December 7, 2020 prior to the formation of the License Agreement, when Amara represented that Biron was the owner of the Intellectual Property and not Amara.

<u>Third</u>, as to the "what" of the negligent misrepresentation claim, Biron specified Amara's statements that confirmed to Biron that Biron was the owner of its Intellectual Property—despite Amara acting otherwise and taking Biron's Intellectual Property as their own.

<u>Fourth</u>, as to the "how" of the negligent misrepresentation claim, Biron alleged that these misrepresentations by Amara directly induced Biron into entering into the License Agreement in March 2021.

For at least these reasons, Defendant's Motion should be denied with prejudice.

## II. STATEMENT OF THE CASE

### A. Summary of Biron's Case Against Amara

This case stems from Biron's desire to build and nurture connections between birth and foster parents to support foster children. (ECF No. 13, ¶10). From 2017 to 2019, Biron developed

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS - 2
CASE NO. 2:25-CV-02526-GJL

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, Washington 98104-4041
(206) 946-4910

program documents and trainings that detailed a unique approach to bridging the relationship between birth and foster parents, an effort that eventually became the FCP. (ECF No. 13, ¶10).

On November 4, 2019, Amara contacted Biron to form a partnership between FCP and Amara. (ECF No. 13, ¶14). Mazen, the Director of Foster Care Services at Amara in 2019, and Biron engaged in tentative negotiations about a potential partnership. (ECF No. 13, ¶14). During this initial conversation, Mazen reassured Biron that she would "look at Amara ensuring that [FCP's work] happens in a way that is supportive and not taking over in any way." (ECF No. 13, ¶14). In particular, this statement showed that Biron and Amara shared a vision for how the two organizations could continue FCP's work of bridging relationships between foster children with their birth parents. (ECF No. 13, ¶14). Moreover, this statement recognized that Amara would merely act as a host organization and in Amara's words, "not [take] over" operations of FCP beyond the terms of the License Agreement. (ECF No. 13, ¶14).

Biron acquired funding for FCP through Washington State and Casey in November and December of 2020. (ECF No. 13, ¶16–17). As these funding opportunities gradually solidified, Amara and Biron engaged in negotiations for a non-exclusive License Agreement between Amara and FCP to use Biron's Intellectual Property in November and December of 2020. (ECF No. 13, ¶16–17). Prior to disbursing funds from Casey, Scopetta, Casey's attorney, needed to confirm the owner of FCP's Intellectual Property. (ECF No. 13, ¶16–17). Scopetta relayed to Biron that "Amara has made Casey aware that Katie Biron, Amara's contractor, is the owner of the Family Connections Materials and trademarks" on December 7, 2020. (ECF No. 13, ¶16).

These reassurances and representations formed the basis for Amara's and FCP's License Agreement that was finalized and executed on March 10, 2021. (ECF No. 13, ¶18). Consistent with this understanding, the License Agreement provided that FCP was "the owner of trademarks and/or service marks [for] Family Connections Program and accompanying design, including all common law rights, including the marks set forth on Schedule A." (ECF No. 13, ¶19). Moreover,

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS - 3
CASE NO. 2:25-CV-02526-GJL

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, Washington 98104-4041
(206) 946-4910

Amara was only granted "the nonexclusive right and license to use the Trademarks…and the materials developed for the Program [] in connection with the Program." (ECF No. 13, ¶21).

When the time came to renew the License Agreement, on February 27, 2025, Chung ("Chung"), Chief Innovation and Program Officer at Amara, informed FCP that Amara had "elected not to renew the Family Connections Program license." (ECF No. 13, ¶27). Moreover, Amara would further "ensure that all FCP materials, name, derivative work and logo [would] be removed prior to the license expiration." (ECF No. 13, ¶27)

Despite these promises, Amara did not return FCP's Intellectual Property and has been improperly using Biron's Intellectual Property. (ECF No. 13, ¶29).

**B. Procedural History**

On November 10, 2025, Biron initially filed a Complaint in Washington Superior Court for King County (ECF No. 1-1). On December 10, 2025, Amara removed the case to this Court on the improper basis of federal question jurisdiction, which Biron will separately address in a forthcoming motion. (ECF No. 1).

On December 17, 2025, Amara filed a motion to dismiss, seeking to dismiss Biron's negligent misrepresentation claim. On January 7, 2026, Biron filed an Amended Complaint in response to the dismissal motion. (ECF No. 8, 13), which mooted Amara's dismissal motion.(ECF No. 14).

On January 20, 2026, Amara again filed a dismissal motion, moving against Biron's negligent misrepresentation claim. (ECF No. 15).

### III. LEGAL STANDARD

A negligent misrepresentation claim "grounded in fraud" subject to the pleading standards of Rule 9(b). *Wessa v. Watermark Paddlesports, Inc.*, No. C06-5156 FDB`, 2006 WL 1418906, at *2 (W.D. Wash. May 22, 2006); Fed. R. Civ. P. 9(b). *See also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (requiring the plaintiff to plead the who, what, when, where, and how of the fraudulent acts). However, to adequately plead a negligent misrepresentation, this only

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS - 4
CASE NO. 2:25-CV-02526-GJL

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, Washington 98104-4041
(206) 946-4910

requires pleading "the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Walling v. Beverly Enters.*, 476 F.2d 393, 397 (9th Cir. 1973). It is therefore sufficient to merely plead the "statements of the time, place and nature of the alleged fraudulent activities." *Bosse v. Crowell Collier & Macmillan*, 565 F.2d 602, 611 (9th Cir. 1977) (reversing a dismissal of a fraud-based claim under Rule 9(b) because the claim provided sufficient statements of the time, place, and nature of the alleged fraudulent activities).

In short, the particularity requirement of Rule 9(b) is not intended to be "'a sword in the hands of a defendant that cuts off claims that may be meritorious, especially when it is clear that the party accused of fraud has sufficient information to defend himself.'" *Lewis v. Berry*, 101 F.R.D. 706, 709 (W.D. Wash. 1984) (quoting *Omega-Alpha, Inc. v. Touche Ross & Co.*, Fed.Sec.L.Rep. (CCH) ¶ 95,663 at 90,267–268 (S.D.N.Y. 1976)).

## IV. ARGUMENT

Biron has adequately alleged a claim for negligent misrepresentation under Rule 9(b) with respect to all of the elements of this claim. Under Washington law, a plaintiff establishes a negligent misrepresentation claim when it is shown that the defendant negligently supplied false information that the defendant knew, or should have known, would guide the plaintiff to make a business decision. *Van Dinter v. Orr*, 157 Wash. 2d 329, 333, 138 P.3d 608, 609 (2006). As set forth below, Biron has pleaded all of the elements with sufficient particularity under Rule 9(b):

**A. Biron has Adequately Alleged the "Who" of the Negligent Misrepresentation Claim.**

Biron adequately alleged the "who," of her Negligent Misrepresentation claim by identifying the individuals who misrepresented statements to her. When pleading the "who" element under Rule 9(b), Plaintiff may identify the organization or individuals who made the misrepresentations. *Fairhaven Health, LLC v. BioOrigyn, LLC*, No. 2:19-CV-01860-RAJ, 2020 WL 5630473, at *9 (W.D. Wash. Sept. 21, 2020) (denying a dismissal of a negligent misrepresentation claim when the Plaintiff adequately identified individuals and the organization who made the alleged misrepresentations).

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS - 5
CASE NO. 2:25-CV-02526-GJL

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, Washington 98104-4041
(206) 946-4910

Here, Biron pleaded that Amara made multiple misrepresentations about Biron's ownership of the Intellectual Property. First, Mazen, , the Director of Foster Care Services at Amara in 2019, guaranteed that Biron was the sole owner of the Intellectual Property leading up to the formation of the License Agreement on November 4, 2019. (ECF No. 13, ¶ 50). Further, Biron pleaded that on February 27, 2025, Chung separately guaranteed that Amara would not breach the License Agreement by not returning Biron's Intellectual Property, though they did breach the agreement in 2025. (ECF No. 13, ¶ 53).

In their Motion, Amara does not rebut the identity of the individuals making the false misrepresentations. Nowhere in their Motion does Amara rebut whether Mazen or Chung provided these materially false statements. (ECF No. 15, p. 6–7). Instead, Amara attempts to deflect their false statement, relayed by Scopetta, claiming that it does not bear on Amara because "[the statement] was allegedly made to an attorney for Casey, a third party." (ECF No. 15, p. 7). However, Amara's deflection does not negate the fact that Amara represented that Biron was the "owner of the Family Connections Materials and trademarks." (ECF No. 13, ¶ 51). Moreover, Amara never addresses the material issue that Amara representatives made these false assurances to Biron prior to and during the entrance of the License Agreement in order induce Biron to enter into the License Agreement. (ECF No. 13, p. 6–7)

These allegations state with particularity each individual who made misrepresentations about Biron's ownership of the Intellectual Property and sufficiently alleges the "who" element in accordance with the Rule 9(b) standard for a negligent misrepresentation claim.

Biron has stated with particularity the "who" of its Negligent Misrepresentation claim.

**B. Biron Has Adequately Alleged the "Where" and "When" of the Negligent Misrepresentation Claim.**

Biron adequately alleged the "where" and "when" of the Negligent Misrepresentation Claim by sufficiently identifying the date and context of the misrepresentations. The "where" and "when" arguments are collapsed into the "when" element. *Fairhaven Health,* 2020 WL 5630473,

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS - 6
CASE NO. 2:25-CV-02526-GJL

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, Washington 98104-4041
(206) 946-4910

at *9 (analyzing merely "when" the negligent misrepresentations occurred in a 9(b) dismissal motion).

Each of the allegations from the complaint states the respective date and relative context of Amara's negligent misrepresentations. Mazen contacted Biron to inquire about a potential partnership between Amara and Biron on November 4, 2019. (ECF No. 13, ¶ 14). On December 7, 2020, Scopetta confirmed the misrepresentations that Amara made to Casey, prior to Biron and Amara finalizing the License Agreement. (ECF No. 13, ¶ 17). And, prior to cancelling the License Agreement, Chung assured Biron that Amara would remove Biron's Intellectual Property from its website on February 27, 2025. (ECF No. 13, ¶ 27).

The Amended Complaint sufficiently alleges when and where Amara negligently misrepresented false information and the statements' context.

**C. Biron Adequately Alleged the "What" of the Negligent Misrepresentation Claim**

Biron has sufficiently pleaded claims as to "what" statements Amara supplied to Biron to overcome Rule 9(b). *Fairhaven Health,* 2020 WL 5630473, at *9 (admitting Plaintiff's negligent misrepresentation claim under the "what" element of Rule 9(b) because Plaintiff detailed Defendant's numerous misrepresentations about patents prior to the parties finalizing a license agreement).

First, Biron adequately pleaded details about Mazen's false representations. Mazen "ensured FCP that Amara was 'supportive and not taking over in any way' from FCP's efforts." (ECF No. 13, ¶14). Biron relied upon Mazen's false statements to enter into the non-exclusive License Agreement because these statements assured Biron that Amara shared Biron's vision for FCP and would simply act as a host organization for FCP. (ECF No. 13, ¶14). In reality, Amara intended to wholesale take and use Biron's Intellectual Property.

In their Motion, Amara argues that Biron fails to point to facts that show what is false about Amara's representations. (ECF No. 15, p. 6). In particular, Amara states that "Plaintiff fails to adduce any facts suggesting that Amara believed otherwise [that the Intellectual Property belonged

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS - 7
CASE NO. 2:25-CV-02526-GJL

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, Washington 98104-4041
(206) 946-4910

to FCP] at the time of contracting." (ECF No. 15, p. 6). However, by pleading these misrepresentations as the basis for the Negligent Misrepresentations claim, Biron clearly points to the context of the misstatements, what specific representations were false, and how these representations induced Biron to contract with Amara. (ECF No. 13, ¶¶ 49–56).

Second, Amara's statement, made in December 2020 through Scopetta, further reinforced that Amara would only act as a host organization for FCP—assisting in the provision of FCP—prior to the formation of the License Agreement in March 2021. Scopetta ensured Biron that "'Amara has made Casey aware that Katie Biron, Amara's contractor, is owner of the Family Connections materials and trademarks.'" (ECF No. 13 ¶ 51). This statement reassured Biron that she would retain control over FCP's Intellectual Property following the formation of the License Agreement.

Moreover, the Motion does not refute the falsity of Scopetta's statement. Instead, the Motion simply states that Biron "fails to allege that she ever received [Scopetta's] communication (not intended for her) as of the time of the relevant contract, or that she relied on it." To the contrary, Scopetta contacted Biron directly to relay Amara's understanding that Biron owned FCP's Intellectual Property during the License Agreement negotiations. (ECF No. 13, ¶17).

Lastly, on February 27, 2025, Chung informed Biron that Amara would not renew the License Agreement with FCP and assured Amara would remove "'all FCP materials, name, derivative work and logo…prior to the license expiration.'" (ECF No. 13, ¶27). This statement assured Biron that Amara would return Biron's Intellectual Property following the expiration of the License Agreement. However, instead of returning her Intellectual Property, Amara has retained control over Biron's Intellectual Property that it has no right to retain. Though occurring after the formation of the License Agreement, Amara's misstatement indicates a pattern and practice of false misrepresentations, consistent with the misrepresentations prior to and during Amara's and Biron's partnership.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS - 8
CASE NO. 2:25-CV-02526-GJL

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, Washington 98104-4041
(206) 946-4910

For the reasons stated above, Biron has properly alleged the "what" of the Negligent Misrepresentation claim by showing that Amara made statements and representations upon which Biron specifically relied to enter into the License Agreement.

**D. Biron Adequately Alleged the "How" of the Negligent Misrepresentation Claim.**

Biron adequately alleged "how" Biron reasonably relied upon Amara's misstatements prior to the formation of the License Agreement and afterwards. *Fairhaven Health,* 2020 WL 5630473, at *9 (ruling that the "how" element of Rule 9(b) is met when Plaintiff sufficiently detailed its reasonable reliance on the Defendant's patent misrepresentations prior to the parties entered into a license agreement).

Biron relied upon Amara's false statements, through Mazen and Scopetta, when entering into the License Agreement:

First, Biron pleaded that she relied upon Mazen's statements when Biron initially considered Amara to act as the host organization for FCP, and Mazen's statements assured Biron that Amara would share Biron's and FCP's goals. (ECF No. 13, ¶14). These statements influenced Biron to consider Amara as a host organization for FCP in November 2019 and enter the License Agreement with Amara. (ECF No. 13, ¶14). Reasonably relying upon Mazen's statement, Biron believed, at the time, that Amara would ensure that Biron retained control over FCP and its Intellectual Property if Biron and Amara signed a License Agreement. (ECF No. 13, ¶¶ 14–18). However, this was not true. Amara simply took Biron's Intellectual Property. (ECF No. 13, ¶¶ 29–31)

Second, Biron pleaded that she relied upon Scopetta's statements when Biron and Amara formalized the License Agreement and the statements. Prior to Casey releasing funds to Biron, Casey required confirmation that Biron was the sole owner of FCP. (ECF No. 13, ¶16). In verifying that Biron was the sole owner of FCP through Amara, Scopetta assured Biron that she would retain control over FCP after Amara became a host organization for FCP in March 2021. (ECF No. 13, ¶18). This false statement allowed Casey to distribute funds to Biron and for Amara and FCP to

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS - 9
CASE NO. 2:25-CV-02526-GJL

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, Washington 98104-4041
(206) 946-4910

finalize their License Agreement. (ECF No. 13, ¶17). Thus, because Biron reasonably relied upon Amara's statement, through Scopetta, Biron entered into the License Agreement with Amara, when she otherwise wouldn't have.

Lastly, as to Chung's false statements, these misrepresentations reinforced to Biron that Amara would return Biron's Intellectual Property. However, in reality, Amara had no intention to return the Intellectual Property following the nonrenewal of the License Agreement. (ECF No. 13, ¶28).

Based on the above reasoning, Biron has adequately alleged the "how" of the Negligent Misrepresentation claim.

## V. <u>LEAVE TO AMEND</u>

Amara's Motion should be denied because Biron has sufficiently pleaded the necessary elements of a negligent misrepresentation claim pursuant to Rule 8, 9(b), and 12(b)(6). However, should the Court grant Amara's Motion, Biron respectfully requests that the Court provide Biron with leave to amend the Amended Complaint, as it is entitled to do here when Biron has already alleged facts with respect to each element of the negligent misrepresentation claim and any amendments thereafter would require Biron to only plead additional detail should the Court require it. *Khan Air, LLC v. U.S. Aircraft Ins. Grp.*, No. C05-0420L, 2005 WL 2739167, at *1 (W.D. Wash. Oct. 24, 2005) (granting leave to amend in order to expand upon the particularity of the plaintiff's negligent misrepresentation claim). As such, an amendment would not be futile.

## VI. <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Defendant's Motion to Dismiss Plaintiff's Third Cause of Action – Negligent Misrepresentation with prejudice.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS - 10
CASE NO. 2:25-CV-02526-GJL

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, Washington 98104-4041
(206) 946-4910

DATED this 10th day of February, 2026.

SEYFARTH SHAW LLP


By *s/ Daniel B. Keum*
Matthew E. Moersfelder, WSBA No. 45620
Daniel B. Keum, WSBA No. 57174
999 Third Avenue, Suite 4700
Seattle, Washington 98104-4041
Phone: (206) 946-4910
Email: mmoersfelder@seyfarth.com
dkeum@seyfarth.com

*Attorneys for Plaintiff*

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS - 11
CASE NO. 2:25-CV-02526-GJL

SEYFARTH SHAW LLP
999 Third Avenue
Suite 4700
Seattle, Washington 98104-4041
(206) 946-4910